**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MEGAN MACAULEY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| | : | **NO. 10-7057** |
| **ESTATE OF FRANK C. NICHOLAS et al,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| | : | |
| | : | |

**<u>MEMORANDUM OPINION</u>**

**Tucker, C. J.**                                                                 **March 25, 2014**

      Presently before the Court are six motions for judgment on the pleadings: (1) Defendant

Gateway Funding Diversified Mortgage Services, LP's Motion for Judgment on the Pleadings

(Doc. 114); (2) Defendant Prudential Reddington Realtors' Motion for Judgment on the

Pleadings (Doc. 115); (3) Defendant First American Title Insurance Co.'s Motion for Judgment

on the Pleadings (Doc. 118); (4) Defendants Chase Abstract Co. and Steve P. Stampone's

Motion for Judgment on the Pleadings (Doc. 120); (5) Defendants Estate of Frank C. Nicholas,

Casey Nicholas, and Elizabeth Nicholas' Motion for Judgment on the Pleadings (Doc. 124)

("Nicholas Defendants"); and (6) Defendant Aurora Commercial Corp.'s Motion for Judgment

on the Pleadings (Doc. 137).[1] Also under consideration are Plaintiff's responses in opposition to

the above-referenced motions. (Docs. 116, 117, 122, 123, 125, & 138.)  Upon consideration of

the parties' motions with briefs and exhibits, and arguments presented at oral argument,

---

[1]    Aurora Commercial Corp. is the successor entity to Aurora Bank FSB, the named defendant in Plaintiff's
Complaint.

Defendants'[2] motions will be granted for the reasons set forth below.  The Court will dismiss Plaintiff's federal law claims, with prejudice, and declines to exercise supplemental jurisdiction over Plaintiff's pendent state law claims.

## I.   FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

### A.   OVERVIEW

This is a civil RICO action.  Plaintiff Megan Macauley ("Macauley") initiated this action against twenty defendants,[3] including her ex-husband, Defendant Christopher Hill ("Hill"), whom Macauley alleges orchestrated a series of fraudulent real estate transactions in her name without her knowledge.  Macauley contends that all the Defendants aided and abetted Hill and, as a result of the transactions, she sustained damage to her creditworthiness and reputation.  The Complaint asserts twelve causes of action for violations of the Racketeer Influenced and Corrupt Organization Act ("RICO") under 18 U.S.C. §§ 1962(a) – (d), conversion, fraud, unjust enrichment, negligence and gross negligence, breach of contract, violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 *et seq.*, and mortgage lending claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, and the Home Mortgage Disclosure Act ("HMDA"), 12 U.S.C. § 2801 *et seq.*  Macauley requests the following relief: one

---

[2]    Henceforth, the Court's use of the term "Defendants" refers to the moving defendants whose motions are presently before the Court.

[3]    The following defendants have not filed answers or otherwise responded to Macauley's Complaint: Wasubul Investments, LLC; Shawn Strauss; Bear Sterns Residential Mortgage Corp.; BNC Mortgage, Inc.; EMC Mortgage Co.; Financial Mortgage Corp.; and Nick Yaimbilis.  It is not clear whether these defendants were ever properly served.  Further, the Court granted Defendant Aaron Abstract Co.'s unopposed motion to dismiss on November 13, 2012.  As such, Aaron Abstract Co. has been terminated as a party to this action.

million dollars, interest, costs, reasonable attorneys' fees, threefold damages, and punitive damages.

### B.   PLAINTIFF'S FACTUAL ALLEGATIONS[4]

Because the Court writes primarily for the parties, the Court will discuss only those alleged facts relevant to its decision.  Megan Macauley and Christopher Hill met sometime in 2005 and were married on June 16, 2007.  At all times relevant to the Complaint, Macauley was a teacher and Hill worked with a real estate investment group named AmGroup and later, Defendant Wasubul Investments, LLC.  By October 13, 2007, Macauley and Hill were separated. The Complaint details the following fraudulent transactions.

On December 6, 2006, Macauley and Hill purchased a property located at 3248 Berry Brow Drive, Chalfont, Pennsylvania ("Berry Brow property").  The house was originally owned by Frank and Elizabeth Nicholas, the parents of Hill's friend and business associate, Defendant Casey Nicholas.  Macauley alleges that Hill persuaded her to refinance her condominium, at 404 Victoria Drive, to free up cash for the purchase of the Berry Brow property.  Defendant Scott Sciarra, then an employee at Defendant Gateway Funding, refinanced the condo for $192,000. Macauley received approximately $21,000 for weddings costs and a down payment on Berry Brow.  The couple paid an additional $100,000 at closing.  Macauley contends that Hill made her believe that the $100,000 was his and that he had deposited the money into her account to go towards the closing.  However, Macauley later discovered through bank records that Casey

---

[4]   The factual history set forth by the Court is compiled from the well-pled facts of Macauley's Complaint (Doc. 1) and RICO Case Statement (Doc. 112).  See Chovanes v. Thoroughbred Racing Ass'n, CIV. A. 99-185, 2001 WL 43780, at *2 n. 3 (E.D. Pa. Jan. 18, 2001) ("The RICO Case Statement is a pleading that may be considered part of the operative complaint for the purposes of a motion to dismiss or a motion for judgment on the pleadings.") (citing Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir.1993); Smith v. Berg, No. 99-2133, 1999 WL 1081065, at *3-5 (E.D. Pa. Dec. 1, 1999)).

Nicholas deposited the $100,000 into her account.  Macauley further contends that the mortgage obtained for the property far exceeded its fair market value.

Also on December 6, 2006, Defendant Bear Stearns Residential Mortgage Co. approved a first mortgage for $464,250 and a second mortgage for $123,800.00 on the Berry Brow property. The appraiser was Defendant Shawn Strauss.  The title company used was Aaron Abstract Co. The mortgage originator was Scott Sciarra.

Hill made several additional purchases of properties with the assistance of the above defendant companies and individuals.  Macauley contends that the purchases were in her name and that she had no knowledge of any of them.  These properties include:

(1)     1741 N. 27th St Philadelphia, PA (appraised by Shawn Strauss; brokered by Defendant Financial Mortgage Corp.; Defendant Chase Abstract was the title company; Defendant Steve Stampone was the title clerk and notary);

(2)     1709 N. 27th Street, Philadelphia, PA (appraised by Shawn Strauss; brokered by Financial Mortgage Corp.; Chase Abstract was the title company; Defendant First American Title Insurance provided title insurance; Steve Stampone was the title clerk and notary); and

(3)     2453 Turner Street, Philadelphia, PA ("Turner Street property") (seller was Wasubul Investments, LLC; Chase Abstract was the title company; Bear Sterns provided the mortgage; Gateway Diversified Mortgage received a 3% origination fee).

In addition, Hill also purchased a property located at 137 Buckhill Rd., Albrightville, PA ("Buckhill Road property") in 2005 prior to the couple's marriage and then later had the property transferred to Macauley's name without her knowledge or consent. According to the Complaint, all of the properties went into foreclosure.

Macauley contends that she did not learn of Hill's actions until after she received a notice of foreclosure on the Berry Brow property.  Macauley then ran her credit report and discovered

that Berry Brow was listed in her name, in addition to the Turner Street property.  She also discovered unknown credit card debt, water/sewer bills and several agreements of sale that referenced Defendant Nick Yaimbilis.

As previously noted, Macauley and Hill separated on October 13, 2007.  Macauley's divorce from Hill was finalized on July 10, 2008.   Macauley was forced to file bankruptcy as a result of Hill's fraudulent transactions.  As part of the couple's divorce settlement, Hill sold all of the properties listed in Macauley's name; however, Macauley remains liable for the deficient balance with the mortgage companies.

###### C.    RELEVANT PROCEDURAL HISTORY

Macauley's Complaint was filed on December 3, 2010.  A Rule 16 Conference was held in this matter on May 7, 2012.  Subsequently, on May 11, 2012, the Court ordered Macauley to file a RICO Case Statement to provide additional details of her alleged RICO claims.  To support the RICO Case Statement, Macauley requested to take the deposition of Hill, the alleged "ring-leader" of the alleged RICO conspiracy.  Pursuant to court order, Hill's multi-day deposition was completed on July 31, 2012 and Macauley filed her RICO Case Statement on September 14, 2012. (Doc. 112.)

Thereafter, the instant motions for judgment on pleadings were filed.  Oral argument on the motions was subsequently held on June 12, 2013.[5]  Macauley has not filed an amended complaint in this action, so the allegations in the original Complaint remain unchanged and are supplemented by the court ordered RICO Case Statement.

---

[5]    Aurora Commercial Corp. did not participate in oral argument.  It's Motion for Judgment on the Pleadings was not filed until August 5, 2013.

## II.   STANDARD OF REVIEW

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed-but early enough not to delay trial." Fed.R.Civ.P. 12(c).  A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard of review applicable to a motion to dismiss under Rule 12(b)(6). See Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir.1991). A court may dismiss a plaintiff's complaint under Rule 12(b)(6) only when it does not state a claim for relief that is "plausible on its face."  Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  All well-pled factual allegations contained in a plaintiff's complaint must be accepted as true and must be interpreted in the light most favorable to plaintiff.  Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011).  A complaint is plausible on its face when its factual allegations allow a court to draw a reasonable inference that a defendant is liable for the harm alleged.  Santiago, 629 F.3d at 128.

To determine the sufficiency of a complaint, courts of the Third Circuit are required to perform a three-step analysis.  Santiago, 629 F.3d at 130.  First, a court must identify plaintiff's claims and determine the required elements of those claims.  Id.  Next, a court must identify, and strike, conclusory allegations contained in plaintiff's complaint.  Id.  Conclusory allegations are those that are no more than "an unadorned, the-defendant-unlawfully-harmed-me accusation, labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertion[s]." Argueta, 643 F.3d at 72 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2010)) (internal quotation omitted).  Finally, a court must determine if the remaining factual allegations "plausibly give rise to an entitlement for relief." Id. at 73.

The focus of a court's inquiry into the sufficiency of a plaintiff's complaint is always plausibility of relief. Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012). Plausibility does not require a plaintiff's complaint to demonstrate entitlement to relief is likely or probable. Argueta, 643 F.3d at 72. A plaintiff's complaint must only plead facts sufficient, "to raise a reasonable expectation that discovery will reveal evidence of the necessary element." McTernan v. City of York, PA, 564 F.3d 636, 646 (3d Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." McTernan, 564 F.3d at 646 (citing Twombly 550 U.S. at 555-556).

No less than any other type of case, civil RICO plaintiffs are required to plead, with "some specificity," facts sufficient to plausibly give rise to entitlement to relief. In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 369-370 (3d Cir. 2010).

### III.   DISCUSSION

### A.      The Effect of Macauley's Bankruptcy

Before discussing the merits of Macauley's claims, the Court must be satisfied that Macauley is the correct plaintiff in this action. Defendant Aurora Commercial Corp. ("Aurora") argues Macauley lacks standing to bring her claims because she failed to list them as assets when she filed for bankruptcy. (Aurora's Mot. J. Pleadings at 12-13.)[6] The Court agrees. Because Macauley failed to disclose these causes of action in her bankruptcy petition, she lacks standing

---

[6]     Aurora correctly points out that Macauley's pleadings contain scant factual allegations against Aurora. The Complaint states only that Aurora "maintains its principal place of business in New York, New York." (Compl. at ¶ 21.) Similarly, aside from being described as the "[l]ender who took assignment of the fraudulent loan," Aurora is not listed by name anywhere else in the Rico Case Statement. (See RICO Case Statement at ¶2(o).) Accordingly, Aurora is not discussed in the Court's factual background, section I.B, supra.

to pursue them now.  The Chapter 7 trustee is the only person that has the authority to bring these claims, and he or she must be substituted as the real party in interest under Federal Rule of Civil Procedure 17 if this case is to continue.

A debtor filing for bankruptcy protection under Chapter 7 creates an estate, which "includes all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  "The broad scope of § 541 includes causes of action existing at the time the bankruptcy petition is filed." Nicolaides v. Bank of Am. Corp., CIV.A. 10-1762, 2012 WL 2864468, at *8 (E.D. Pa. July 12, 2012) (citing Anderson v. Acme Markets, Inc., 287 B.R. 624, 628 (E.D.Pa.2002)).  A cause of action need only accrue to a plaintiff prior to filing to become property of the bankruptcy estate; a formal complaint is not necessary. Feist v. Consol. Freightways Corp., 100 F. Supp. 2d 273, 274 (E.D. Pa. 1999) aff'd, 216 F.3d 1075 (3d Cir. 2000).

Thus, where a debtor's cause of action arises before a debtor files for bankruptcy, "[t]he Chapter 7 trustee [is] the only person with authority to bring such a cause of action."  In re Banks, 223 F. App'x 149, 151 (3d Cir. 2007) (citing Cain v. Hyatt, 101 B.R. 440, 442 (E.D.Pa. 1989)); see also 11 U.S.C. § 323(a)-(b).  The bankruptcy trustee is the proper party to pursue causes of action belonging to the estate because any recovery benefits all creditors of the estate.  See In re Emoral, Inc., 740 F.3d 875, 879 (3d Cir. 2014). "[W]here a debtor conceals an asset or fails to schedule it, the asset remains the property of the bankruptcy estate and, accordingly, the debtor can be found to lack standing to pursue its further disposition." In re Kane, 628 F.3d 631, 641 (3d Cir. 2010); see also McKenna v. Healthease, Inc., CIV.A. 10-3940, 2013 WL 159379, at *2 (E.D. Pa. Jan. 15, 2013) ("If a legal claim is not scheduled or otherwise administered by the time

8

the bankruptcy is closed, it forever remains property of the estate, and the trustee remains the real party in interest.") (quoting Matthews v. Potter, 316 F. App'x 518, 521 (7th Cir.2009)).

Here, Macauley filed her bankruptcy petition on January 30, 2008.[7]  See Voluntary Petition, 2:08-bk-10723 (Bankr. E.D. Pa. January 30, 2008), ECF No. 1.  Macauley admits that she did not list any legal claims as assets in her Chapter 7 petition.  (Pl.'s Resp. in Opp'n to Aurora's Mot. J. Pleadings at 3.)  Accordingly, any cause(s) of action that accrued prior to that date are part of the estate.

"A RICO claim accrues when the plaintiffs knew or should have known of their injury and the source of their injury." Roberts v. First Bank of Delaware, 3:07CV1406, 2008 WL 4372826, at *7 (M.D. Pa. Sept. 19, 2008) (quoting Prudential Ins. Co. v. U.S. Gypsum Co., 359 F.3d 226, 233 (3d Cir.2004)); see also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994) ("[A] claim accrues in a federal cause of action upon awareness of actual injury, *not upon awareness that this injury constitutes a legal wrong*.") (emphasis added).  As the Complaint makes clear, prior to filing for bankruptcy protection Macauley knew about Hill's actions, as well as the damage she alleges his actions caused her.  On September 27, 2007 Macauley received a foreclosure notice that prompted her to investigate her credit.  (Compl. at ¶¶ 83-85.)  Macauley's credit report revealed multiple properties listed in her name, "exorbitant credit card debt" in Macauley's name, and unpaid utility bills for properties in Philadelphia.  (Id. at ¶ 85.)  When Macauley confronted Hill, he admitted that he had purchased properties in Macauley's name.  (Id. at ¶¶ 86-87.)  Between September 27, 2007 and January 30, 2008, the

---

[7]   In resolving a motion under Federal Rule of Civil Procedure 12(b)(6) or 12(c), "a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 256 n.5 (3d Cir. 2006) (quoting S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir.1999)).  Accordingly, because it is a public record, the Court may consider Macauley's bankruptcy filings in resolving the instant motions.

Complaint details multiple foreclosure proceedings and collection efforts being initiated against Macauley as a result of Hill's actions.  (<u>Id.</u> at ¶¶ 83-99.)  Indeed, Macauley notes that she "was forced to file bankruptcy *as a result of all the fraudulent transactions*…." (<u>Id.</u> at ¶104) (emphasis added).

Macauley clearly knew of her injury, and its source, before her bankruptcy filing.  Her injuries were the very cause of her bankruptcy petition, as well as her divorce. Because Macauley's RICO claims accrued prior to her bankruptcy petition, and Macauley failed to list these claims in her petition, they belong exclusively to the estate.  As such, the bankruptcy trustee is the true party in interest, and Macauley lacks standing to bring these claims before this Court.  <u>See</u> <u>In re Kane</u>, 628 F.3d at 641.

Where the trustee, not the plaintiff, has been determined to be the true party in interest for a given cause of action, courts in this circuit have split on how to proceed.  Some courts dismiss the claim for lack of subject-matter jurisdiction, while others permit substitution of the trustee under Rule 17(a)(3).  <u>Compare</u> <u>Allston-Wilson v. Philadelphia Newspapers, Inc.</u>, CIV.A. 05-4056, 2006 WL 1050281, at *1-2 (E.D. Pa. Apr. 20, 2006) (dismissing claims for lack of subject matter jurisdiction) <u>and</u> <u>In re Cmty. Bank of N. Virginia Mortgage Lending Practices Litig.</u>, 954 F. Supp. 2d 360, 382 (W.D. Pa. 2013) (dismissing claims and finding "unprecedented" plaintiffs' request "that they should be given time to reopen their bankruptcies, and substitute the bankruptcy trustee as the real party in interest.") <u>with</u> <u>McKenna</u>, 2013 WL 159379, at *3 (allowing plaintiff to reopen bankruptcy proceedings to substitute the trustee "because outright dismissal of her case would be a harsh sanction.") <u>and</u> <u>Killmeyer v. Oglebay Norton Co.</u>, 817 F.

Supp. 2d 681, 690 (W.D. Pa. 2011) (granting trustee's motion to substitute but noting "[t]he scope of Rule 17(a)(3) is not unlimited…").

In the present matter, Macauley received her discharge almost six years ago.  See Order Discharging Debtor, 2:08-bk-10723 (Bankr. E.D. Pa. May 29, 2008), ECF No. 48.  Macauley first received notice that Aurora challenged her ability to prove standing on May 20, 2011. (Aurora's Mot. to Dismiss at 8-9.)  In the intervening months, Macauley has never sought to reopen her bankruptcy and permit the trustee to be substituted as the real party in interest.  The Court finds Macauley's inaction to be significant and problematic.  These claims, should they exist at all, belong to Macauley's bankruptcy estate.  McKenna, 2013 WL 159379, at *2. Macauley should not be able to benefit at the expense of the real party in interest to this action, the bankruptcy trustee.

**B.     RICO**[8]

1.     Standing under Section 1964(c)

Before the Court considers the merits of Macauley's RICO claims under 18 U.S.C. § 1962, the Court first addresses the threshold question of the adequacy of her pleadings as it relates to RICO standing under §1964(c). See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 520–21 (3d Cir.1998) (stating that § 1964(c) sets forth the "standing requirement" applicable to suits brought under RICO).  To bring a civil RICO claim, a plaintiff must satisfy two statutory elements to confer standing: (1) that she suffered an injury to her "business or property"; and (2) that her injury was proximately caused by the defendants' violation of § 1962.

---

[8]     Having concluded that Macauley lacks standing to bring this action, the Court's analysis could end there. However, purely for the sake of completeness, the Court proceeds to discuss the merits of Macauley's claims in the unlikely event that bankruptcy trustee contemplates reviving Macauley's claims.

11

18 U.S.C. § 1964; see also Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir.2000) (internal

citations omitted.  The Court finds that Macauley is unable to satisfy either element.

a)      Injury to Business or Property

Injury to business or property requires "a concrete financial loss and not mere injury to a

valuable intangible property interest." Maio, 221 F.3d at 483 (quotation omitted).  Because she

has not alleged an injury to her business or property, the Court finds Macauley does not have

standing to pursue her RICO claims.

Practically conclusive on this issue is Macauley's RICO Case Statement.  When asked to

describe the alleged injury to business or property, Macauley answered: "None can be described

at this time and at this early stage of litigation."  (RICO Case Statement at ¶ 12.)  When asked to

list the alleged victims and state how each victim was allegedly injured, Macauley answered:

> Plaintiff Megan Macauley.  Her credit was destroyed.  She had to file for
> bankruptcy.  Her signature was forged and she became liable for hundreds of
> thousands of dollars of debt that she could never hope to repay and whose credit
> is literally wrecked and ruined for years to come.  Her identify [sic] was stolen
> through the actions and inaction of Defendants.

(Id. at ¶ 3(a).)  Finally, when describing the direct causal relationship between her injury and the

violation of the RICO statute, Macauley concludes her answer by saying, "As a result, Plaintiff is

bankrupt with dismal to no credit."  (Id. at ¶ 13.)

Macauley's Complaint fares no better, alleging damage only as a result of her bankruptcy

and loss of creditworthiness.  (Compl. at ¶¶ 104, 177.)  Though the Complaint is rich in factual

allegations regarding collection attempts and foreclosure proceedings, Macauley fails to allege

that she took any action other than filing for bankruptcy.  For instance, Macauley does not allege

that she actually *paid* any of these outstanding bills, or that she was forced to expend money to

12

defend against the foreclosure actions filed against her.  See <u>Miller v. Pocono Ranch Lands Prop.</u> <u>Owners Ass'n Inc.</u>, 13-1477, 2014 WL 661573, at *3 (3d Cir. Feb. 21, 2014) (Plaintiff could not establish injury or fraud where she knew that bills sent to her were unwarranted and she had refused to make payment.).  The Complaint only references that Macauley's credit was ruined and she was forced to file for bankruptcy, without alleging any concrete financial losses Macauley actually suffered as a result.  The loss of creditworthiness, without more, is simply not enough to confer RICO standing.  <u>Walter v. Palisades Collection, LLC</u>, 480 F. Supp. 2d 797, 805 (E.D. Pa. 2007) ("Injury to one's credit score is analogous to injury to one's reputation, and is not actionable.") (citing <u>Maio</u>, 221 F.3d at 483).

Only in Macauley's responses to Defendants' respective motions does she allege anything other than damage to her creditworthiness: legal fees paid to her current attorneys. (<u>See</u> <u>e.g.</u>, Pl.'s Resp. in Opp'n to Nicholas' Mot. J. Pleadings at 6.)  While certain legal fees can be the type of concrete out-of-pocket expenses required to demonstrate injuries under RICO, <u>see</u> <u>Walter</u>, 480 F. Supp. 2d at 804, "the attorney's fees injury must have been proximately caused by the defendant's [racketeering activities]."  <u>Lynch v. Capital One Bank (USA), N.A.</u>, CIV.A. 12-992, 2013 WL 2915734, at *3 (E.D. Pa. June 14, 2013); <u>see also</u> <u>McCoy-McMahon v. Godlove</u>, 08-CV-05989, 2011 WL 4820185, at *16 (E.D. Pa. Sept. 30, 2011) (legal expenses were not proximately caused by RICO violations because plaintiff was not "hauled into court" and instead incurred the fees "at her own initiation in response to the individual defendants alleged racketeering activities.").  Macauley's response alleges that she "has had to pay the undersigned to represent her in this matter, and will incur additional costs throughout this litigation and beyond, in an effort to restore her creditworthiness."  (Pl.'s Resp. in Opp'n to Nicholas' Mot. J.

Pleadings at 6.)  Such an injury, while concrete, is not *proximately* caused by Defendants'

allegedly fraudulent conduct.  Because Macauley has not alleged a concrete injury to her

business or property that was proximately caused by the Defendants' fraudulent conduct, she

lacks standing under § 1964(c) and cannot allege a viable RICO claim.

2.   Violation of § 1962

The Court has already held that Macauley has failed to satisfy the first element of

standing under §1964(c).  Nevertheless, even assuming arguendo that Macauley has adequately

alleged injury to her business or property, the well-pled facts of Macauley's Complaint and

RICO Case Statement do not plausibly demonstrate an entitlement to relief under §§ 1962(a),

1962(b), 1962(c), or 1962(d).  As such, the second element of the § 1964(c) standing

requirement is not met.

a)   Section 1962(c)

Section 1962(c) states, in pertinent part, "[i]t shall be unlawful for any person employed

by or associated with any enterprise engaged in, or the activities of which affect, interstate or

foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity…."  18 U.S.C. § 1962(c).  To state a

claim under § 1962(c), a plaintiff must allege defendants: (1) conducted; (2) an enterprise; (3)

through a pattern; (4) of racketeering activity; (5) resulting in damage to plaintiff's business or

property.  Tapp v. Proto, 718 F. Supp. 2d 598, 625 (E.D. Pa. 2010) aff'd, 404 F. App'x 563 (3d

Cir. 2010) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)); see also Ins.

Brokerage Antitrust Litig., 618 F.3d at 362 (quoting Lum v. Bank of Am., 361 F.3d 217, 223 (3d

Cir.2004)).

i.      The Enterprise Element

The Court will first discusses Macauley's "enterprise" allegations.  For the purposes of RICO, an enterprise is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Macauley has pled two potential enterprises through which racketeering activity is alleged to have occurred: Wasubul Investments, LLC, and an association-in-fact enterprise referred to as the "Hill Enterprise."  The Court discusses each of these alleged enterprises separately.  Schwartz v. Lawyers Title Ins. Co., CIV.A, 09-841, 2013 WL 4676704, at *4 (E.D. Pa. Aug. 30, 2013) ("Plaintiffs may allege alternative enterprise theories in their complaint without limit.") (citing United States v. Stratton, 649 F.2d 1066, 1075 (5th Cir.1981)).

The first of the alleged enterprises is Wasubul Investments, LLC.  (RICO Case Statement at ¶ 6.)  "When the enterprise asserted is a legal identity, such as a legitimate business or organization the need to allege and prove the existence of enterprise structure can be met without great difficulty, since all aspects of the enterprise element are satisfied by the mere proof that the entity does in fact have a legal existence."  Ins. Brokerage Antitrust Litig., 618 F.3d at 364 (internal quotation omitted).  The alleged RICO enterprise "cannot simply be the 'person' referred to by a different name."  Stoss v. Singer Fin. Corp., CIV.A.08-5968, 2010 WL 678115, at *5 (E.D. Pa. Feb. 24, 2010) (citing Cedric Kushner Productions, Ltd. v. King, 533 U.S. 158, 161 (2001)).  Thus, a plaintiff can bring a civil RICO claim against an owner who conducts her company's affairs in a way forbidden by RICO, but cannot allege RICO claims against a company, its employees and its agents for the same conduct where the company is the enterprise and violates RICO through its employees and agents.  Id.

Formed at the instruction of its sole investor Frank Nicholas, and run by Defendants Hill and Casey Nicholas, Wasubul Investments was allegedly the legal entity used by Hill and the Nicholas Defendants to buy and sell real estate.  (RICO Case Statement at ¶¶ 9, 10.)  To the extent that Frank Nicholas, Casey Nicholas, and Hill acted through this legal entity to commit mail, wire, and bank fraud, Wasubul Investments can constitute an enterprise for the purposes of RICO.[9]

Macauley has also alleged a second, more amorphous enterprise she refers to as the "Hill Enterprise."  (Compl. at ¶ 127; RICO Case Statement at ¶¶ 5(d), 9.)  The Hill Enterprise's purpose, according to Macauley, was "using Plaintiff's identity to commit mortgage fraud and ruin her credit." (RICO Case Statement at ¶ 5(b).)  "An association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981). To demonstrate an association-in-fact enterprise, a civil RICO plaintiff must identify at least three structural features of the enterprise: (1) a purpose; (2) relationships among those alleged to be associated with the enterprise; and (3) longevity sufficient to allow the enterprise to pursue its purpose. Boyle v. United States, 556 U.S. 938, 946 (2009).  "An association-in-fact enterprise need have no formal hierarchy or means for decision-making, and no purpose or economic significance beyond or independent of the group's pattern of racketeering activity." Ins. Brokerage Antitrust Litig., 618 F.3d at 368 (quoting United States v. Hutchinson, 573 F.3d 1011, 1021 (10th Cir.), cert. denied sub. nom. Montoya v. United States, 558 U.S. 1036 (2009)).

---

[9]    The Nicholas Defendants rightly point out that both the Complaint and the RICO Case Statement contain scant accusations of participation in fraudulent conduct by Elizabeth Nicholas.

According to the Complaint, the Hill Enterprise was comprised of all the Defendants "to perpetrate fraudulent transactions."  (RICO Case Statement at ¶ 5(d).)  These fraudulent real estate purchases were typically initially financed by the Nicholas Defendants, appraised above their true value, and then refinanced or fraudulently sold to Macauley at the inflated appraisal price.  (RICO Case Statement at ¶ 2(a).)  Each defendant allegedly played some role in this overall scheme.  Some, such as Defendant Shawn Strauss, conducted the appraisals for the properties, while the other defendants were the mortgage brokers, title companies, and realtors for the transactions.  (Compl. at ¶¶ 49-53; 58-63; 65-71; 73-77.)  Defendants were all motivated by the common goal of making money through these transactions.  (RICO Case Statement at ¶ 4(c).).

These allegations, if true, are sufficient to show an association-in-fact enterprise existed between and amongst the Defendants.[10]

> ii.    The Conduct and Pattern of Racketeering Activity Elements

Mere association with an enterprise, however, does not violate §1962(c).  Ins. Brokerage Antitrust Litig., 618 F.3d at 370.  The conduct element of § 1962(c) requires that a defendant must participate "in the operation or management of the enterprise itself."  Reves v. Ernst & Young, 507 U.S. 170, 183 (1993). Operation of an enterprise necessarily includes both management and lower level participants under the direction of management.  Ins. Brokerage

---

[10]  As will be seen, the Court's conclusion as to the existence of an association-in-fact enterprise referred to as the "Hill Enterprise" says nothing about the ultimate viability of Macauley §1962(c) claim.  See Boyle v. United States. 556 U.S. at 947 ("[T]he existence of an enterprise is an element distinct from the pattern of racketeering activity and proof of one does not necessarily establish the other.") (quoting Turkette, 452 U.S. at 583.)  The Court's conclusion is merely that, under the allegations of Macauley's Complaint and RICO Case Statement, the Defendants shared a purpose and had sufficient relationships amongst one another to pursue that purpose.  Boyle, 556 U.S. at 946.

Antitrust Litig., 618 F.3d at 371 (quoting Reves, 507 U.S. at 184).  Liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  Reves, 507 U.S. at 185 (emphasis in original).  Furthermore, the defendants must conduct or participate in the enterprise's affairs "through — that is, by means of, by consequence of, by reason of, by the agency of, or by the instrumentality of — a pattern of racketeering activity."  Ins. Brokerage Antitrust Litig., 618 F.3d at 372 (internal quotation and citation omitted); see also United States v. Bergrin, 650 F.3d 257, 267 (3d Cir.2011) ("It is the 'person' charged with the racketeering offense—not the entire enterprise—who must engage in the 'pattern of racketeering activity.'") (citing H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 244 (1989)).

A person engages in a pattern of racketeering activity by engaging in "at least two acts of racketeering activity" within a span of ten years.  18 U.S.C. § 1961(5).  Racketeering activity forms a pattern where the racketeering activities are "related, and that they amount to or pose a threat of continued… activity."  H.J. Inc., 492 U.S. at 239; see also Bergrin, 650 F.3d at 267.  Relatedness is demonstrated when racketeering predicates "have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and not isolated events."  Mega Concrete, Inc. v. Smith, CIV.A. 09-4234, 2013 WL 3716515, at *10 (E.D. Pa. July 15, 2013) (citing H.J., Inc., 492 U.S. at 239-240)).  Continuity is "a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  H.J., Inc., 492 U.S. at 241.  Closed-ended continuity, such as Macauley has alleged[11]

---

[11]   Macauley clearly alleges a closed-ended scheme.  (Compl. ¶ 127.)  Macauley asserts the "Hill Enterprise" lasted "[f]rom approximately August 2005 through approximately 2009."  (Id.)  Though Macauley has not alleged any

in this case, must demonstrate that the related predicate acts occurred over a substantial period of time.  Id. at 242.

Macauley has alleged Defendants engaged in the racketeering acts of mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C § 1343, and bank fraud under 18 U.S.C. § 1344.[12] (Compl. at ¶¶ 131, 134, 140; RICO Case Statement at ¶¶ 4(b); 4(c).)  Even if the Court were to credit Macauley's Complaint with sufficiently alleging the elements of each of these racketeering acts, and their relatedness,[13] the Complaint makes clear that they took place over a period of weeks to months, not over a substantial period of time.  See Hughes v. Consol. Pa. Coal Co., 945 F.2d 594, 611 (3d Cir.1991) (twelve months is not a substantial period of time so as to satisfy closed-ended continuity).

As Macauley admits, the first fraudulent transaction any defendant allegedly engaged in was the sale of a property on December 6, 2006.  (Pl.'s Resp. in Opp'n to Nicholas' Mot. J.

---

facts to show that the Hill Enterprise lasted into 2009, her allegations make clear that there is no continued activity from the Hill Enterprise, nor any threat of repetition.

[12]   To the extent that Macauley alleges any predicate acts outside of mail, wire, or bank fraud, they do not qualify as racketeering activity under §1961.  In her RICO Case Statement, Macauley identifies the predicate acts complained of as "Federal and State Statutes that prohibit fraud, forgery and identify [sic] theft, all as stated in Plaintiff's Complaint."  (RICO Case Statement at ¶ 4(a).)  As 18 U.S.C. § 1961(1) makes clear, however, racketeering activity has a specific definition that does not include most, if not all, of Macauley's alleged predicate acts. Acts of fraud, forgery or identity theft punishable under state laws are clearly not racketeering activity.  See 18 U.S.C. § 1961(1)(A) (violation of state laws prohibiting "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance…" punishable by more than one year in jail qualifies as racketeering activity.); Williams v. Stone, 109 F.3d 890, 894 (3d Cir. 1997) ("Racketeering activity is defined as, inter alia, conduct involving any one of nine enumerated offenses that is chargeable under State law and punishable by imprisonment for more than one year.") (emphasis added). "[C]ommon law fraud does not constitute a predicate act under RICO."  Bartlett v. Pennsylvania Blue Shield, CIV.A. 02-4591, 2003 WL 21250587, at *3 n.5 (E.D. Pa. Mar. 31, 2003); see also Giuliano v. Fulton, 399 F.3d 381, 388 (1st Cir. 2005) ("While this allegation, if true, may constitute fraud or other common law or statutory violations, it does not amount to a RICO predicate act because [defendant] is not alleged to have utilized the mail or the wires.").  Fraud, forgery, or identity theft punishable under federal laws are also not racketeering activity, unless the acts are proscribed by any of the statutes listed in 18 U.S.C. § 1961(1)(B)-(G).

[13]   Even this would be a stretch, as there is no single transaction or closing in which all the Defendants are alleged to have been involved.

19

Pleadings at 7; Compl. at ¶¶ 45-50.)  Macauley also alleges three subsequent fraudulent real

estate purchases and one fraudulent transfer of real estate, with the last of these fraudulent acts

occurring on January 25, 2007.  (Compl. at ¶¶ 56-79.)  The only other potentially fraudulent act

Macauley alleges is a real estate appraisal by Shawn Strauss on May 3, 2007.  (Compl. at ¶ 80.)

Thus, the racketeering activities alleged in Macauley's Complaint existed for, at most, a period

of six months, and likely no more than two.  This is insufficient to allege continuity over a

substantial period of time.  See Hughes, 945 F.2d at 611.

> b)    Section 1962(a)

Macauley next alleges violations of 18 U.S.C. 1962(a), which makes it unlawful

> for any person who has received any income derived, directly or indirectly, from a
> pattern of racketeering activity… to use or invest, directly or indirectly, any part
> of such income, or the proceeds of such income, in acquisition of any interest in,
> or the establishment or operation of, any enterprise which is engaged in, or the
> activities of which affect, interstate or foreign commerce...

18 U.S.C. 1962(a).  Section 1962(a) "was primarily directed at halting the investment of

racketeering proceeds into legitimate businesses, including the practice of money laundering."

Brittingham v. Mobil Corp., 943 F.2d 297, 303 (3d Cir.1991).  Accordingly, to sufficiently plead

a violation of § 1962(a), a plaintiff must allege three elements:  (1) the defendant has received

money from a pattern of racketeering activity; (2) the defendant then utilized that money to

acquire or establish in an enterprise; and (3) that enterprise affects interstate or foreign

commerce.  Additionally, a plaintiff "must allege an injury resulting from the investment of

racketeering income distinct from an injury caused by the predicate [racketeering] acts

themselves." Guy's Mech. Sys., Inc. v. FIA Card Servs., N.A., 339 F. App'x 193, 194 (3d Cir.

2009) (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir.1993)); see also

Kolar v. Preferred Real Estate Investments, Inc., 361 F. App'x 354, 360 (3d Cir. 2010) ("Because the objectives of § 1962(a) are directed specifically at the use or investment of racketeering income, it requires that a plaintiff's injury be caused by the use or investment of income in [an] enterprise.") (quoting Brittingham, 943 F.2d at 303).

In her Complaint, Macauley does not set forth how she was injured as a result of Defendants' investment of their alleged racketeering income; the Complaint, in a conclusory fashion, merely restates the elements of a § 1962(a) claim.  (Compl. at ¶¶ 126 – 132.)  Further, Macauley's RICO Case Statement only alleges that Hill "either pocket[ed] refinance funds or use[d] them for the purchase of the next home, which he would promptly sell or refinance." (RICO Case Statement at ¶ 8(b).)  Such an allegation – that Hill continued to reinvest racketeering income to keep the enterprise alive long enough to injure Macauley – has been repeatedly rejected by courts of this circuit.  Lightning Lube, 4 F.3d at 1188; Brittingham, 943 F.2d at 305; Kolar, 361 F. App'x at 368 n.6.  Such a claim is properly brought under § 1962(c), not 1962(a).

Macauley has alleged no facts detailing how she was harmed as a result of Defendants' alleged use of racketeering income.  As such, these claims will be dismissed.

c)      Section 1962(b)

Section 1962(b) makes it "unlawful for any person through a pattern of racketeering activity…to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. 1962(b).  Thus, to state a cause of action under this section, a plaintiff must allege: (1) defendant has an interest in an enterprise; (2) defendant gained or maintained that interest through a pattern

21

of racketeering; and (3) the enterprise affects interstate commerce.  "It is not enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise." Cottman Transmission Sys., LLC v. Kershner, 536 F. Supp. 2d 543, 560 (E.D. Pa. 2008).  Additionally, a plaintiff "must show injury from the defendant's acquisition or control of an interest" of the enterprise via racketeering activities.  Lightning Lube, 4 F.3d at 1190.

Again, Macauley's Complaint merely baldly restates the statutory elements of a claim under § 1962(b) and offers no facts to demonstrate how Defendants acquired or maintained their interest in either Wasubul or the Hill Enterprise *through* a pattern of racketeering.  (Compl. at ¶¶ 133-136.)  Macauley's RICO Case Statement similarly fails to even describe how Defendants acquired or maintained an interest in any enterprise, other than the entirely legal creation of a Pennsylvania limited liability corporation, Wasubul Investments.  (RICO Case Statement at ¶¶ 2(a); 6; 9.)  This is fatal to her claims under§ 1962(b).

d)      Section 1962(d)

Section 1962 makes it "unlawful for any person to conspire to violate" 18 U.S.C. §§ 1962(a)-(c).  18 U.S.C. § 1962(d).  "Any claim under section 1962(d) based on a conspiracy to violate [any of] the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." Lightning Lube, Inc., 4 F.3d at 1191 (citing Leonard v. Shearson Lehman/Am. Express, Inc., 687 F.Supp. 177, 182 (3d Cir.1988)); Kolar, 361 F. App'x at 366 n.13 ("If the substantive RICO claims fail on the merits, as they do here, Lightning Lube controls.").  Because Macauley's RICO claims are all substantively deficient for reasons beyond standing issues, dismissal of her claim under Section 1962(d) is appropriate.

        3.    <u>Aiding and Abetting</u>

Finally, Macauley's cause of action for aiding and abetting RICO violations also fails. The Third Circuit has clearly and unequivocally rejected a civil RICO aiding and abetting claim. <u>Pennsylvania Ass'n of Edwards Heirs v. Rightenour</u>, 235 F.3d 839, 844 (3d Cir. 2000). Accordingly, the Court will dismiss Macauley's aiding and abetting claim.

**C.    Mortgage Lending Claims**

Macauley's remaining federal claims arise under Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq.*, and Home Mortgage Disclosure Act ("HMDA"), 12 U.S.C. §§ 2801 *et seq.*, resulting from "defendants failure to conduct themselves in conformance with their own regulations." (Compl. at ¶¶ 180-182.)[14]  Because there is no private right to action under HMDA, and because Macauley's RESPA and ECOA claims are barred[15] by the applicable statute of limitations, the Court dismisses these claims.

        1.    <u>RESPA</u>

Macauley's RESPA cause of action generally alleges the Defendants violated RESPA's anti-kickback provision, 12 U.S.C. § 2607.  (Pl.'s Resp. in Opp'n to Gateway's Mot. J. Pleadings

---

[14]  Macauley's mortgage lending claims, as alleged in the Complaint, are completely devoid of specific allegations and are nothing more than legal conclusions.  (Compl. at ¶¶ 180-182.)  "[T]he Federal Rules do not place the onus on the defendant to piece together the disparate fragments of a disjointed complaint to distill the essence of a claim."  <u>Glover v. F.D.I.C.</u>, 698 F.3d 139, 148 (3d Cir. 2012).  The Court discusses Macauley's mortgage lending claims insomuch as it can piece together any colorable cause of action from the general statutes cited.

[15]  Though the statute of limitations is an affirmative defense, a court can dismiss a claim for failure to comply with the applicable statute of limitations where the facts to support such a dismissal are apparent on the face of a complaint. <u>W. Penn Allegheny Health Sys., Inc. v. UPMC</u>, 627 F.3d 85, 105 n. 13 (3d Cir.2010) ("Although Federal Rule of Civil Procedure 8(c) suggests that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, our cases recognize that a defendant may raise a limitations defense in a motion to dismiss. For the defendant to prevail, though, the plaintiff's tardiness in bringing the action must be apparent from the face of the complaint.") (internal citations omitted).

at 9.)   Claims under § 2607 are subject to a one-year statute of limitations.  12 U.S.C. § 2614.

The violation of RESPA occurs, and the statute of limitations begins to run, on the date of

closing and/or settlement.  12 U.S.C. § 2614; In re Cmty. Bank of N. Virginia, 622 F.3d 275, 281

(3d Cir. 2010); Taggart v. Norwest Mortgage Inc., 539 F. App'x 42, 43-44 (3d Cir. 2013).  Here,

the loans underlying Plaintiffs' claims had closing dates between December 2006 and January

2007. (Compl. at ¶¶ 49-50; 58; 65; 73).  Accordingly, Macauley's RESPA claims are barred by §

2614's statute of limitations because she did not file her Complaint until December 3, 2010.[16]

       2.    ECOA

Macauley's ECOA cause of action appears to flow from Defendants' failure to provide

her with notification regarding applications for credit made in her name.  (Pl.'s Resp. in Opp'n to

Gateway's Mot. J. Pleadings at 9.)  ECOA requires a creditor to "notify the applicant of its action

on the application."  15 U.S.C. § 1691(d)(1).  In 2006 and 2007, when any applications for credit

would have been made in Macauley's name, ECOA actions were subject to a two-year statute of

limitations. Compare 15 U.S.C. § 1691e(f) (1991) with 15 U.S.C. § 1691e(f) (2011) (five-year

---

[16]   The discovery rule, which Macauley has argued in response to Defendants' limitation arguments, has no applicability to RESPA claims.  In enacting § 2614, Congress mandated that a plaintiff has a right to bring an action "within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title *from the date of the occurrence of the violation*…." 12 U.S.C. § 2614 (emphasis added).  Application of the discovery rule, which would delay accrual of the claim until a plaintiff learns of her injury, see Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994), would render the highlighted portion of § 2614 completely superfluous.  See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").  For this reason, courts across the country have refused to apply the discovery rule to RESPA claims.  See, e.g., Yin Kuen Cheung v. Wells Fargo Bank, N.A., 13-01756 RS, 2013 WL 6443116, at *2 (N.D. Cal. Dec. 9, 2013); Perkins v. Johnson, 551 F. Supp. 2d 1246, 1254 (D. Colo. 2008); Mullinax v. Radian Guar. Inc., 199 F. Supp. 2d 311, 324 (M.D.N.C. 2002).  While RESPA's statute of limitations can be equitably tolled, see, e.g., White v. PNC Fin. Servs. Grp., Inc., CIV.A. 11-7928, 2013 WL 3090823, at *2 n.4 (E.D. Pa. June 20, 2013), Macauley has not argued for equitable tolling and her Complaint fails to allege facts that could support such an allegation.

statue of limitations).  Like RESPA, ECOA actions begin to accrue upon violation of the statute, not a plaintiff's discovery of her injury.  15 U.S.C. § 1691e(f) (1991) ("No such action shall be brought later than two years *from the date of the occurrence of the violation*….") (emphasis added).  Because any applications for credit were made in 2006 and 2007, and Macauley did not file her Complaint until December 3, 2010, the claims are barred by the applicable statute of limitations.

   3. <u>HMDA</u>

   The HMDA does not provide aggrieved mortgagees with private right of action; only the appropriate administrative agency can properly maintain an action.  12 U.S.C. § 2804; <u>see</u> <u>also</u> <u>Stefanowitz v. Suntrust Mortgage, Inc.</u>, CIV.A. 3:10-1321, 2011 WL 2970805, at *5 (M.D. Pa. Apr. 27, 2011) <u>report</u> <u>and</u> <u>recommendation adopted</u>, 3:10-CV-1321, 2011 WL 2960870 (M.D. Pa. July 20, 2011) ("With respect to any claim attempting to be brought pursuant to the HMDA, this statute provides only for administrative enforcement."); <u>Swartz v. City Mortgage, Inc.</u>, 911 F. Supp. 2d 916, 924, 925 (D. Haw. 2012) ("[T]he HMDA does not provide for a private right of action.").  For this reason, the Court dismisses Macauley's HMDA claim.

  **D.** **State Law Claims**

   Finally, the Court addresses Macauley's pendent state law claims for conversion, fraud, unjust enrichment, negligence and gross negligence, breach of contract, and violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 *et seq.*  District courts may "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ...." 28 U.S.C. § 1367(a).  However, where a district court dismisses all claims over

which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).  "Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Bright v. Westmoreland Cnty., 443 F.3d 276, 286 (3d Cir.2006) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir.1995)). Because the Court finds no such considerations to be present here, it will decline to exercise supplemental jurisdiction over Macauley's state law claims.

### E.      Amendment of the Complaint

Because the Court will dismiss Macauley's Complaint in its entirety, the question remains as to whether the Court will allow Macauley to amend her Complaint.  In light of the discovery already granted to Macauley, her lack of standing, and the futility of her federal claims, the Complaint will be dismissed with prejudice.

Amendments prior to trial are governed by Federal Rule of Civil Procedure 15.  The Federal Rules direct courts grant a party leave to amend their complaint "when justice so requires." Fed.R.Civ.P. 15(a)(2).  "When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)).  "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In determining whether a claim would be futile, the district court applies the same standard of legal sufficiency as applies under Federal Rule of

Civil Procedure 12(b)(6)."  Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 243 (3d Cir. 2010) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997)).

The Court will dismiss Macauley's RICO claims with prejudice, because no amendment will cure: (1) her lack of standing; (2) her lack of damages; (3) her inability to allege a pattern of racketeering activity; and (4) the extensive deficiencies noted in all of her substantive RICO claims.  Even with the benefit of limited discovery, Macauley admits that her Complaint and RICO Case Statement contain nothing more than "legal conclusions based on what she knows at this point, i.e., that her name was forged on several documents to complete the sale of several over-valued properties."  (Pl.'s Resp. in Opp'n to Gateway's Mot. J. Pleadings at 3.)  As the Third Circuit has recently recognized, "the concern expressed in Twombly is just as applicable to a RICO case, which resembles an antitrust case in point of complexity and the availability of punitive damages and of attorneys' fees to the successful plaintiff.  RICO cases, like antitrust cases, are 'big' cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim."  In re Ins. Brokerage Antitrust Litig., 618 F.3d at 370 (quoting Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir.2008)).  Because Macauley cannot allege more than legal conclusions, even after having the opportunity to depose the alleged ringleader of the RICO enterprise, the Court sees no reason to subject Defendants to additional discovery *in terrorem*.

The Court also will dismiss Macauley's RESPA and ECOA claims with prejudice because they are, by Macauley's own admission, beyond the statute of limitations.  Likewise,

27

Macauley's HMDA claim will be dismissed with prejudice because there is no private right to action under the HMDA.  No amount of re-pleading will allow Macauley to remedy these defects.

## V.   CONCLUSION

For the reasons more fully set forth above, Macauley's federal law claims will be dismissed with prejudice.  Because the Court will dismiss all claims over which it had original jurisdiction, the Court will decline to exercise supplemental jurisdiction over Macauley's state law claims and expresses no opinion on the merits of these claims.

An appropriate order follows.